# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

MICHAEL KOWALYSHYN,
    Plaintiff,

v.

DIANA WILLETT, et al.,
    Defendants.

No. 3:10cv752 (SRU)

## RULING ON MOTION TO DISMISS

Michael Kowalyshyn, a state prisoner appearing *pro se*, filed suit under 42 U.S.C. § 1983 against ten defendants: four state court reporters, two public defenders, an assistant state's attorney, two Connecticut Superior Court judges, and, lastly, Brian Murphy, the warden of Northern Correctional Institution, a Connecticut prison. Kowalyshyn's complaint alleges that, prior to his conviction, the first nine defendants violated his civil rights by fabricating court transcripts and/or permitting those transcripts to be used in official court proceedings. The complaint separately alleges that Murphy is liable for not providing Kowalyshyn access to a law library, in violation of Kowalyshyn's constitutional right of access to the courts. Kowalyshyn seeks damages against all defendants.

In the initial review order (doc. # 5), I dismissed as frivolous and as failing to state a claim Kowalyshyn's allegations against the first nine defendants, but I permitted Kowalyshyn's access-to-the-courts claim against Murphy to go forward. On January 28, 2011, Murphy moved to dismiss that claim. For the reasons set forth in this ruling, Murphy's motion is granted and Kowalyshyn's complaint is dismissed.

**I.    Background**

The following facts are drawn from Kowalyshyn's complaint, the documents attached to it, and state court records referenced in the complaint. Kowalyshyn is an inmate at Northern

Correctional Institution, where he was first housed as a pretrial detainee. On July 19, 2007, following a jury trial, he was found guilty of "attempt to commit assault in the second degree in violation of General Statutes §§ 53a-49 (a)(2) and 53a-60, threatening in the second degree in violation of General Statutes § 53a-62, reckless endangerment in the second degree in violation of General Statutes § 53a-64, intimidation based on bigotry or bias in the second degree in violation of General Statutes § 53a-181k and disorderly conduct in violation of General Statutes § 53a-182." *State v. Kowalyshyn*, 116 Conn. App. 711, 713 (2010). Kowalyshyn received a sentence of eight years' imprisonment followed by two years' parole. *Id.* at 716.

Before trial, the state court assigned Kowalyshyn several public defenders whom Kowalyshyn successively rejected. At a hearing on January 30, 2007, the court appointed Kowalyshyn a private attorney and informed him that if Kowalyshyn waived his right to counsel, the private attorney would serve as standby counsel to assist him during trial. In the end, a special public defender, Richard Marquette, represented Kowalyshyn at trial. Glen Falk, another special public defender, represented Kowalyshyn on appeal. Kowalyshyn sued both Marquette and Falk as defendants in this case.

Northern Correctional Institution does not offer its inmates a law library. Instead, the prison provides its inmates "access to persons trained in the law." Northern Correctional Institution Inmate Handbook 53. Inmates are referred to the Connecticut Office of the Chief Public Defender for assistance with their appeals and habeas corpus petitions, and the Department of Correction contracts with Shulman and Associates ("Shulman"), a private legal office, to provide assistance to inmates contesting their conditions of confinement. Northern Correctional Institution does not "provide state prisoners with lawyers to represent them or appear for them in civil rights actions" involving matters other than conditions-of-confinement

challenges. *Id.* at 54.

In December 2006, Kowalyshyn filed two requests for Northern Correctional Institution to provide him access to a legal library, which were both denied. Kowalyshyn also contacted Shulman in 2007 and 2008 for assistance in obtaining relief before the Connecticut Claims Commissioner and the General Assembly on the same claims regarding the fabrication of transcripts that Kowalyshyn is currently pursuing in this suit. Shulman denied Kowalyshyn's requests because the office was only authorized to assist prisoners challenging their conditions of confinement, and not prisoners seeking damages for civil rights violations preceding their incarceration. Finally, Kowalyshyn unsuccessfully sought assistance from student clinics at the University of Connecticut and Yale University law schools.

Kowalyshyn commenced his *pro se* suit in federal court on May 11, 2010. In addition to his complaint, Kowalyshyn included 79 pages of additional documents, including court transcripts, excerpts from the Northern Correctional Institution Inmate Handbook, and his correspondence with the prison's inmate request bureau, Shulman, and the student legal clinics.

## II.  Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Moreover, "[i]t is well established that a district court may rely on matters of public record in deciding a

motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 129 S. Ct. at 1940 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

### III.   Discussion

When the complaint is construed liberally and interpreted as raising the strongest claims it presents, *see Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), Kowalyshyn appears to put forward two bases for relief against Murphy. First, Kowalyshyn claims that Murphy denied him the right of access to the courts by failing to provide a law library during his pretrial detention. And, second, Kowalyshyn asserts that Murphy has denied him that same right by

failing to provide a law library that Kowalyshyn could have used to pursue this lawsuit against the defendants who purportedly fabricated court transcripts and permitted those transcripts to be used in Kowalyshyn's official court proceedings. Neither allegation states a claim on which relief can be granted.

"Prisoners, including pretrial detainees, 'have a constitutional right of access to the courts.'" *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). That right is "grounded, as relevant to prisoners, in the constitutional guarantees of equal protection and due process." *Id.* In *Bounds*, the United States Supreme Court confirmed that prisoners have a right of access to the courts, and further ruled that states have an affirmative duty to ensure that right is protected. Specifically, the *Bounds* Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. But, as the *Bounds* Court acknowledged and the Supreme Court later restated in *Lewis v. Casey*, 518 U.S. 343 (1996), there is no constitutional requirement that states provide their prisoners with law libraries as opposed to other forms of legal assistance.

> [W]hile law libraries are one constitutionally acceptable method to [en]sure meaningful access to the courts, our decision here . . . does not foreclose alternative means to achieve that goal. . . . Among the alternatives are the training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part-time consultant basis, and the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of public defender or legal services offices.

*Bounds*, 430 U.S. at 831. "[P]rison libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present

claimed violations of fundamental constitutional rights to the courts.' . . . *Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825).

The Court of Appeals has explicitly held that "the appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts in conformity with the requirements of the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment." *Bourdon*, 386 F.3d at 94. In other words, the provision of counsel to a pretrial detainee "is a permissible and sufficient means of satisfying the right of access to the courts, but it is not a necessary or exclusive means of doing so." *Id.* at 96; *accord Spates v. Manson*, 644 F.2d 80, 84-85 (2d Cir. 1981) (holding that a state need not provide law libraries to its prisoners "where state-financed legal assistance is available"). A state is not constitutionally obligated to provide a pretrial detainee with additional legal resources, such as a law library, when that detainee is already represented by counsel. Based on Kowalyshyn's complaint and the documents attached to it, Kowalyshyn was represented by counsel before and at his criminal trial. Murphy, therefore, did not violate Kowalyshyn's right of access to the courts by not providing Kowalyshyn the use of a law library during his pretrial detention.

Kowalyshyn's remaining access-to-the-courts claim posits that Murphy was obligated to provide Kowalyshyn with a law library to assist him in the civil rights action he is currently pursuing against the other nine defendants in this case. Based on the complaint and the documents attached to it, Kowalyshyn has pled that he received no resources from the state, either in the form of a law library or counsel's assistance, with respect to this suit. He argues that lack of state assistance constitutes a violation of his right of access to the courts, as

articulated in *Bounds*.

Kowalyshyn's argument fails, however, because *Lewis* curtailed the scope of cases for which states must provide their prisoners legal assistance. The *Lewis* Court held that a prisoner is not denied access to the courts "by just any type of frustrated legal claim." 518 U.S. at 354. Rather, *Lewis* explains:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355 (emphasis in original). The Court of Appeals and decisions from within this district have similarly held that, pursuant to *Lewis*, prisoners are entitled to legal assistance to file civil rights actions only to the extent that those actions challenge the conditions of their confinement. *See Bourdon*, 386 F.3d at 92-93 & n.8 (emphasizing that the right of access to the courts "has particular application to prisoners seeking access to the courts, where they are defending against criminal charges, challenging convictions and sentences, and raising civil rights claims about the conditions of their confinement"); *Friedl v. City of New York*, 210 F.3d 79, 86-87 (2d Cir. 2000) (quoting *Lewis* to support the conclusion that an inmate's right to access the courts includes state-financed assistance for administrative adjudications relating to the conditions of confinement); *Page v. Lantz*, No. 3:05cv1271 (MRK), 2007 WL 1834519, at *4 (D. Conn. June 25, 2007) (holding that inmate was not entitled to legal assistance for a "tort action arising from a motor vehicle accident" because that claim "does not relate to the conditions of confinement"). Other civil rights actions, such as section 1983 claims seeking damages for violations that occurred before an inmate's incarceration, do not trigger a state's affirmative duty to furnish legal assistance under *Bounds*.

Murphy did not violate Kowalyshyn's right of access to the courts by not providing Kowalyshyn a law library to assist him in pursuing damages against those individuals responsible for the purported fabrication of court transcripts admitted against him at trial. Kowalyshyn's section 1983 action does not challenge the conditions of his confinement and, therefore, is not subject to *Bounds*'s constitutional guarantee of state assistance in aid of meaningful access to the courts. To the extent that Kowalyshyn wishes to vacate or set aside his conviction and sentence based on the admission of fabricated transcripts — a remedy that he does not seek in this suit — he would be entitled to legal assistance from the state. And based on the Northern Correctional Institution Inmate Handbook excerpt attached to his complaint, Kowalyshyn would likely receive it: the Handbook states that prisoners may receive legal assistance from the Office of the Chief Public Defender for assistance with their appeals or collateral challenges. Northern Correctional Institution Inmate Handbook 53.

## IV. Conclusion

Because Kowalyshyn's complaint, the documents attached to it, and the public record demonstrate that he was assisted by counsel before and at his criminal trial, and because Kowalyshyn is not entitled to legal assistance in filing a section 1983 action for damages against the alleged fabricators of his court transcripts, Kowalyshyn's claim against Murphy for denial of access to the courts is dismissed. Murphy's motion to dismiss (doc. # 8) is GRANTED. The clerk shall close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 11th day of May 2011.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge